**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Sylvia Lorraine Evans,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>Carolyn W. Colvin, Acting<br>Commissioner of Social Security,<br><br>　　　　　Defendant. | No. CV-12-0504-TUC-DTF<br><br>**ORDER** |

Plaintiff Sylvia Evans brought this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision by the Commissioner of Social Security (Commissioner). Before the Court are Plaintiff's opening brief, Defendant's Opposition and a Reply. (Docs. 24, 27, 30.) The parties consented to exercise of jurisdiction by a Magistrate Judge, pursuant to 28 U.S.C. § 636(c)(1). (Docs. 9, 12.) The Court finds that Plaintiff is not entitled to relief.

## PROCEDURAL HISTORY

On May 7, 2009, Evans filed applications for Supplemental Security Income (SSI) and Disability Insurance Benefits (DIB). (Administrative Record (AR) 130, 133.) Evans alleged disability from December 22, 2008. (AR 130, 133.) Evans's applications were denied upon initial review (AR 57-64) and on reconsideration (AR 68-74). A hearing was held on November 8, 2010 (AR 26-52), after which ALJ Peter J. Baum found that Evans was not disabled (AR 11-20). The Appeals Council denied Evans's request to review the ALJ's decision. (AR 1.)

## FACTUAL HISTORY

Evans was born on January 18, 1957, making her 51 at the alleged onset date of her disability. (AR 130.) From 2003 to her alleged onset date, Evans worked for the Department of Veterans Affairs as a nursing assistant. (AR 36, 140.) In late December 2008, Evans went to urgent care for what she thought was bronchitis and ended up having surgery to repair her aorta. (AR 345.)

The ALJ found that Plaintiff had four severe impairments: hypertension, status post ascending aortic replacement and repair; depression; and anxiety. (AR 14.) The ALJ noted that Evans was cleared by her cardiologist to return to full-time work less than a year after her surgery, which also is documented in the unemployment records. (AR 18.) The ALJ concluded Evans could perform light unskilled work. (AR 16.) At Step Four, the ALJ found Evans could not do her past work as a nursing assistant, which was semi-skilled and a medium exertion level. (AR 19.) However, based on the Medical-Vocational Guidelines, the ALJ concluded at Step 5 that Plaintiff was not disabled and could do other work available in the national economy. (AR 19.)

## STANDARD OF REVIEW

The Commissioner employs a five-step sequential process to evaluate DIB and SSI claims. 20 C.F.R. §§ 404.1520; 416.920; *see also Heckler v. Campbell,* 461 U.S. 458, 460-462 (1983). To establish disability the claimant bears the burden of showing she (1) is not working; (2) has a severe physical or mental impairment; (3) the impairment meets or equals the requirements of a listed impairment; and (4) claimant's RFC precludes her from performing his past work. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). At Step Five, the burden shifts to the Commissioner to show that the claimant has the RFC to perform other work that exists in substantial numbers in the national economy. *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007). If the Commissioner conclusively finds the claimant "disabled" or "not disabled" at any point in the five-step process, he does not proceed to the next step. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989)). The findings of the Commissioner are meant to be conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "more than a mere scintilla but less than a preponderance." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)). The court may overturn the decision to deny benefits only "when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001). This is so because the ALJ "and not the reviewing court must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney,* 981 F.2d at 1019 (quoting *Richardson v. Perales*, 402 U.S. 389, 400 (1971)); *Batson v. Comm'r of Soc. Sec. Admin.,* 359 F.3d 1190, 1198 (9th Cir. 2004). The Commissioner's decision, however, "cannot be affirmed simply by isolating a specific quantum of supporting evidence." *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998) (citing *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989)). Reviewing courts must consider the evidence that supports as well as detracts from the Commissioner's conclusion. *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975).

## **DISCUSSION**

Evans alleges the ALJ committed four errors, that he: failed to properly evaluate the opinions of Evans's treating providers; failed to properly evaluate lay witness testimony; failed to properly evaluate Evans's credibility; and improperly considered the vocational guidelines and should have had a vocational expert testify.

**Treating Providers**

Plaintiff argues the ALJ failed to give appropriate weight to the opinions of her treating medical professionals. She argues the ALJ's rejection of the opinions of Dr. Iyengar,

Dr. Quint and a portion of the opinion of Dr. Rau are not supported by substantial evidence.[1]

Plaintiff argues the ALJ ignored Dr. Iyengar's opinion that Evans was limited to lifting 15 to 20 pounds. The record contradicts this assertion. In August 2009, Dr. Iyengar released Evans for part-time work with a limitation of lifting no more than 15-20 pounds. (AR 548, 660.) However, by early December 2009, Dr. Iyengar released Evans to work full time "as she chooses" with no restrictions. (AR 280, 644-45.) The ALJ cited this opinion in his decision. (AR 18.) Further, the ALJ ultimately concluded that Evans was limited to light work, which involves lifting no more than 20 pounds at a time with frequent lifting of items weighing no more than 10 pounds. 20 C.F.R. §§ 404.1567(b), 416.967(b). This conclusion is compatible with Dr. Iyengar's opinion from December 2009, as well as his lifting restrictions from August 2009. Because the ALJ did not reject the opinion of Dr. Iyengar, and the doctor offered no opinion that contradicted the ALJ's decision, this argument is unfounded. Additionally, the Court notes there are no medical opinions in the record that contradict Dr. Iyengar's opinion or the RFC as found by the ALJ.

Plaintiff also argues that the ALJ ignored the opinion of Dr. Quint, that Evans could not be on her feet for periods of time. In the one record from Dr. Quint, he provided no opinion on Evans's ability with respect to standing, walking or other work functions. Rather, he noted as background that Evans reported an inability to stand or walk for any period of time. (AR 637.) He provided treatment and recommended a consideration of surgical intervention if his conservative recommendations did not resolve the matter. (AR 638.) There are no other records indicating that Evans sought further treatment. In short, Dr. Quint did not express an opinion about Evans's ability to sit, walk or stand upon which the ALJ could have relied. Additionally, there are no treating medical records regarding Plaintiff's ability to stand or walk.

---

[1] Plaintiff also argues that the doctors at COPE found "problems." (Doc. 24 at 9.) However, because Evans makes no argument based on a medical opinion of anyone from COPE, the Court does not address those records nor the assertion of unspecified problems as to this claim.

- 4 -

1    Finally, Plaintiff argues the ALJ ignored the opinion of Dr. Rau that Evans would
2 have episodic problems because of her condition that would interfere with her ability to
3 function.[2] Again, the record shows otherwise. Dr. Rau opined that Plaintiff's "understanding
4 and memory abilities are reasonable and not significantly limited. Episodically, she probably
5 will have some difficulty effectively registering information because of an immediate episode
6 of depression or anxiety or distress." (AR 601.)[3] The ALJ gave great weight to the opinion
7 of Dr. Rau and accepted his finding that she was moderately limited in her ability to sustain
8 concentration and persistence. (AR 15, 18.) Because the ALJ did not reject the opinion of Dr.
9 Rau, there is no factual basis for Plaintiff's argument on this point.

10    Further, Dr. Rau did not provide an opinion on Evan's mental RFC in light of the
11 limitations he identified. However, Dr. Andrew Kerns, non-examining reviewing
12 psychologist did opine on Evan's RFC after reviewing the opinion of Dr. Rau and adopting
13 similar limitations. He ultimately concluded that Evans could do unskilled work (AR 16);
14 there are no opinions to the contrary. The ALJ adopted this singular conclusion in his RFC
15 finding; this was not error and was supported by substantial record evidence. *See Stubbs-*
16 *Danielson v. Astrue*, 539 F.3d 1169, 1173-74 (9th Cir. 2008) (upholding ALJ's RFC which
17 was based on the only doctor to translate the claimant's limitations to concrete restrictions
18 on ability to perform basic work activities).

19    **Plaintiff's Credibility**

20    The ALJ found Plaintiff's statements concerning the severity of her symptoms not
21 credible to the extent inconsistent with the ALJ's RFC finding. (AR 17.) In general,
22 "questions of credibility and resolution of conflicts in the testimony are functions solely" for

---

[2] In her discussion of this claim, Plaintiff indicates she had been designated seriously mentally ill (SMI), which entitles a person to specific benefits from the Arizona Department of Health Services. To the contrary, the records from COPE indicate that, upon review, it was determined that Plaintiff did not satisfy this criteria. (AR 671, 743.)

[3] In support of this argument Plaintiff cites to a portion of a Mental Residual Functional Capacity Assessment conducted by non-examining psychologist Andres Kerns, not to the opinion of Dr. Rau. (Doc. 24 at 10 (citing AR 605).)

1  the ALJ. *Parra v. Astrue,* 481 F.3d 742, 750 (9th Cir. 2007) (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)). However, "[w]hile an ALJ may certainly find testimony not credible and disregard it . . . [the court] cannot affirm such a determination unless it is supported by specific findings and reasoning." *Robbins v. Soc. Sec. Admin.,* 466 F.3d 880, 884-85 (9th Cir. 2006); *Bunnell v. Sullivan*, 947 F.2d 341, 345-346 (9th Cir. 1995) (requiring specificity to ensure a reviewing court the ALJ did not arbitrarily reject a claimant's subjective testimony); SSR 96-7p. "To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis." *Lingenfelter v. Astrue,* 504 F.3d 1028, 1035-36 (9th Cir. 2007).

"First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* at 1036 (quoting *Bunnell,* 947 F.2d at 344). ALJ Baum found Evans had satisfied part one of the test by proving an impairment that could produce the symptoms alleged. (AR 16.) Second, if "there is no affirmative evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Tommasetti v. Astrue,* 533 F.3d 1035, 1039 (9th Cir. 2008) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1281, 1283-84 (9th Cir. 1996)). The ALJ did not find, and the record does not reveal, any evidence of malingering; therefore, to support his discounting of Evan's credibility regarding the severity of her symptoms, the ALJ had to provide clear and convincing, specific reasons. *See Vasquez v. Astrue*, 572 F.3d 586, 592 (9th Cir. 2008) (quoting *Lingenfelter*, 504 F.3d at 1036).

The ALJ's concluded that Evans was not entirely credible because the objective medical evidence did not support the level of impairment alleged by Evans. (AR 19.) He also relied upon the fact that, during the period she alleges she was disabled, she concluded she could work full-time at a sit-down job and she was seeking that type of work. (*Id.*)

Plaintiff argues that all of the medical evidence and the opinions of her treating doctors support her credibility and her subjective complaints and the ALJ erred in not taking this evidence into account. The Court disagrees. At her request (AR 16, 24), Plaintiff's

- 6 -

1  treating cardiologist released her to full-time work in early December 2009. This was less
2  than a year after she had to stop work due to her heart surgery. At that time, December 2,
3  2009, her cardiologist concluded her blood pressure was under excellent control with
4  medication. (AR 654.) In the following weeks, her primary care physician (Dr. Miller)
5  recorded some high blood pressure readings, one of which he concluded might be due to
6  dental pain and a muscle spasm she was experiencing at that time. (AR 770-71, 773.) Dr.
7  Miller increased one of her medications for hypertension and referred her back to Dr.
8  Iyengar. (AR 771.) Evans reported to Dr. Iyengar that her home readings had been normal
9  since the increase in medication and they were normal at his office on December 29, 2009,
10 a rental artery ultrasound showed no significant stenosis, and Dr. Miller concluded her blood
11 pressure again was controlled as of January 12, 2010. (AR 657-58, 768.) Evans saw Dr.
12 Iyengar again in August 2010, at which time her blood pressure was normal, she reported no
13 symptoms of angina, congestive heart failure, palpitations or syncope. (AR 661-62.) She
14 reported that she still was looking for work but keeping busy by exercising. (*Id.*) At a
15 primary care preventative appointment in October 2010, her blood pressure was a bit
16 elevated but the nurse practitioner merely suggested they monitor it and that she change her
17 diet. (AR 765.) The following month at a well woman exam, her blood pressure was again
18 elevated but Evans reported that she did not take her medication that morning. (AR 749.) She
19 did not report any other issues at that time. (AR 749-53.)

20       With respect to foot pain, she saw a podiatrist one time. Dr. Quint provided
21 conservative treatment in November 2009. (AR 637-38.) He indicated that if the suggested
22 treatment did not remedy the problem, surgery could be considered. (AR 638.) Dr. Quint did
23 not restrict her activities or opine on her functional abilities. (AR 637-38.) There are no
24 subsequent records regarding foot pain or treatment for any foot impairment.

25       Regarding Evans's mental health there are limited records. She began treatment at
26 COPE in September 2009, at which time she was diagnosed with depression NOS and
27 anxiety NOS. (AR 585.) The records document Evans attending one subsequent therapeutic
28 appointment at COPE, in December 2009, at which the nurse practitioner recorded her

1 diagnostic impression that Evans had moderate depression and she prescribed Sertraline. (AR
2 724.) Subsequent file notes from her case manager indicate she was doing ok and was stable,
3 but Evans attended no further therapy appointments before she was discontinued from
4 treatment and medication in April 2010 due to being denied AHCCCS for a period of time.
5 (AR 728, 732, 737, 744.) At that time, her assigned nurse practitioner concluded she did not
6 meet the criteria for serious mental illness under the Arizona Department of Health Services
7 criteria. (AR 670-71.) In making this assessment she declined to find that, for a period of
8 twelve months, Evans satisfied one of three necessary criteria, that she be unable to live in
9 an independent or family setting without supervision; a risk of serious harm to herself or
10 others; or unable to perform the present major role function in society – school, work,
11 parenting or other developmentally appropriate responsibility. (*Id.*) After examining her, Dr.
12 Rau found her to have some moderate limitations, that would surface episodically, but no
13 marked limitations; he did not offer an opinion that she was unable to perform basic work
14 functions. (AR 601.) Psychologist Kerns, upon reviewing the records, concluded that Dr.
15 Rau's assessment and his own findings would allow Evans to perform unskilled work. (AR
16 620.)

17 The objective medical evidence is one clear and convincing reason to discount
18 Plaintiff's credibility. As summarized by the ALJ, the record evidence demonstrates that
19 Evans had recovered from her surgery sufficiently to work full-time within one calendar year
20 and that her blood pressure was generally well-controlled with medication. Further, there are
21 no medical opinions indicating her mental health issues were so severe as to prevent her from
22 working.

23 Although the objective medical evidence is not a sufficient reason standing alone to
24 discount her credibility, SSR 96-7p; *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir.
25 1997), the ALJ also cited Evans's unemployment documents and her testimony about her
26 unemployed status. Specifically, during the time she asserts she was disabled she obtained
27 unemployment on the ground that she was able to work and was looking for work. In both
28 August and December 2009, Evans asked her cardiologist to certify her as able to work and

1 he did, releasing her to work initially part-time and then full time. (AR 660, 280.) From
2 December 11, 2009, to November 14, 2010, Evans averred for purposes of unemployment
3 that she was able to work and looking for work. (AR 225-74.) In August 2010, she told Dr.
4 Iyengar that she was continuing to look for employment. (AR 661.) At the hearing, she
5 affirmed that she told the unemployment office she could work as of December 2009, and
6 she had been looking for employment since then. (AR 42-43.) In light of this substantial
7 record evidence, this was a clear and convincing reasons to discount Evans's credibility.

8 The Court finds the ALJ did not error in his treatment of Plaintiff's credibility.

9 **Lay Witness Testimony**

10 Plaintiff argues the ALJ erred in rejecting the testimony of Plaintiff's daughters,
11 Felicia and Cynthia Greenhouse.

12 Felicia Greenhouse completed a function report in June 2009, in which she reported
13 that Evans would feed and take Felicia's dog on short walks, prepare easy foods, sweep, do
14 dishes and laundry, iron, vacuum, and shop. (AR 167, 168, 169.) She noted that Evans
15 needed help to prepare full meals or if there were a lot of dishes or laundry. (AR 168.) Evans
16 had difficulty doing her hair because her right arm was still hurting from the surgery. (AR
17 167.) Felicia reported that Evans would spend time with family but she had withdrawn quite
18 a bit. (AR 170, 171.) Felicia stated that Evans could not lift more than 20 pounds and could
19 only walk a block or up a half flight of stairs without resting. (AR 171.) She also reported
20 that Evans was unable to follow instructions well. (*Id.*)

21 Cynthia Greenhouse completed a function report in October 2009, in which she
22 reported that Evans could do her personal care but had difficulties raising her right arm. (AR
23 193.) Cynthia reported that Evans prepared little food and did not eat much due to
24 depression, that she would do laundry and small chores but could not lift anything heavy or
25 vacuum. (AR 194.) Cynthia indicated that Evans would sit in the house all day due to
26 depression and anxiety and do hardly any activity. (AR 192, 195, 196.) Cynthia indicated that
27 Evans could not lift more than 10 pounds or walk more than 3 blocks, and that she had
28 difficulty with instructions and complicated conversations. (AR 197.)

The ALJ discounted this evidence because the witnesses are not medically trained and, therefore, their observations are questionable; they are not disinterested parties due to their familial relationship with Evans; and because their testimony is not consistent with the doctors' opinions and observations in the record. (AR 18-19.) ALJs must consider lay witness testimony and rejection of lay testimony requires reasons specific to each witness. *Stout v. Comm'r, Social Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006). The first two reasons provided by the ALJ for the rejection are legally insufficient. First, neither of the witnesses purported to provide testimony on their mother's medical signs and symptoms; rather, they reported their day-to-day observations of her activities and abilities. Second, the regulations provide that, when evaluating a claimant's impairments and how they affect her ability to work, the ALJ will consider evidence from non-medical sources, such as family, caregivers and friends. 20 C.F.R. §§ 404.1513(d)(4), 416.913(d)(4). The evidence cannot be rejected simply because it is provided by the sources identified in the regulations, non-medical persons with a relationship to the claimant. *See Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993) (family members in a position to observe the claimant's symptoms and activities are competent to testify as to his impairments); *Valentine v. Comm'r Social. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) (discounting family members' testimony on the basis of that relationship is an insufficiently broad rationale).

However, the ALJ's third reason, that the testimony was inconsistent with the medical opinions and observations of record, is supported by substantial evidence. As discussed extensively above, the only medical opinions in the record state that Evans could work full-time doing light, unskilled work, as of December 2009. In fact, Evans requested a work release at that time. The daughter's testimony focuses primarily on Evans's mental health but no mental health opinions stated that Evans could not work as of December 2009. Evans was determined not to be seriously mentally ill by her mental health agency in April 2010, and the only record opinions reveal that she had at most moderate limitations in select areas. Based on review of the record in entirety, there is substantial record evidence to support the ALJ's finding that Cynthia and Felicia Greenhouse's opinions are inconsistent with the

1 evidence of record.

2 Additionally, the Court finds that any error in this area was harmless. The June 2009 statement by Felicia was provided months before Evans began mental health treatment and 6-months prior to the doctors and the ALJ's finding that Evans could work. Therefore, it has limited relevance to Evans's ability to work beginning in December 2009, and, even if credited would not change the analysis. *See Molina v. Astrue*, 674 F.3d1104, 1115 (9th Cir. 2012) (observing that the Court may find an error harmless if it is "inconsequential to the ultimate nondisability determination.") (quoting *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008)). Similarly, Cynthia's statement is from October 2009, just after Evans had her first appointment at COPE and 2 months prior to her being cleared to work and beginning medication for depression. In November 2009, shortly after Cynthia completed the function report, Evans and one of her daughters reported similar symptoms and activities to Dr. Rau. Based on that information and his testing, he concluded she had mild to moderate limitations but nothing more severe. (AR 597-601.) Any error regarding her testimony is harmless because the Court "confidently conclude[s] that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout*, 454 F.3d at 1056.

**Vocational Testimony**

Plaintiff frames her last claim as one having to do with whether vocational testimony was necessary and whether the Commissioner carried her burden at Step Five. However, her contention actually seems to be that the RFC as found by the ALJ was not based on substantial record evidence and is erroneous. Thus, she argues, if the RFC was accurate, she would have been found disabled at Step Five.

Evans argues that the ALJ erred in his RFC finding because he failed to take into account her problems in walking and using her arm, her psychiatric problems, and her increased blood pressure with activity and stress. As discussed above, there are no medical opinions or records substantiating Plaintiff's assertion that she cannot do light work due to issues with her feet and right arm. Plaintiff sought a referral to a podiatrist and went to one

1 appointment at which she received conservative treatment. There are no additional records
2 or opinions indicating that she is restricted from walking or standing a good portion of the
3 day. Consulting physician Dr. Maloney concluded she could stand or walk for up to 6 hours
4 per day, which allows for light work. (AR 533.) Dr. Iyengar imposed no restrictions on
5 standing or walking. (AR 280.) In the months post-surgery, the records indicate Plaintiff
6 reported right arm pain. (AR 500, 501, 778-79.) Evans points to an appointment on
7 December 9, 2009, at which she presented with a right upper pole trapezius spasm. (AR 773.)
8 This was a singular event, for which there is no follow-up or indication in the records that
9 it was not resolved.[4] After Plaintiff was cleared to work on December 14, 2009 (AR 280,
10 655), there are no records documenting any issues with her right arm. Again, Dr. Iyengar
11 imposed no restrictions on the use of her right arm, nor did any other doctor in the period
12 after December 2009.

13 With respect to her blood pressure, again, Dr. Iyengar did not impose any limitations
14 on her work based on this impairment. At the time he released her to work she reported
15 exercising regularly and her blood pressure was under control. (AR 654.) To the extent
16 Plaintiff's blood pressure was elevated during doctor's appointments in late December 2009,
17 or after, this was not attributed to a particular activity or stress level. Further, when her
18 primary care physician increased one of her medications the issue quickly was resolved. (AR
19 768.) In August 2010, Evans reported no cardiac symptoms and told Dr. Iyengar that she was
20 keeping herself busy with regular exercise. (AR 661.) In October and November 2010, Evans
21 again reported exercising regularly. (AR 750, 763.)

22 The Court has reviewed the issues Plaintiff argues undermine the ALJ's RFC finding
23 that she could do light work and finds the record does not support her contention. More

---

[4] Evans relies on a record from October 26, 2010, which includes muscle spasm in the list of current problems. (AR 761.) However, all of Evans prior problems are re-stated in the current problems list. Further, nothing else in the 6-page record addresses a muscle spasm, no treatment was provided for such a symptom, and the systems review states no back, neck, joint or muscle pain. (AR 761-66.)

- 12 -

importantly, upon review of the entirety of the record, the Court finds the ALJ's RFC finding regarding Evans's exertional abilities is supported by substantial evidence.

The Court also reviews Evans's arguments regarding her psychological issues that she contends the ALJ failed to account for in his ruling. The ALJ concluded Plaintiff could do only unskilled work, based on her psychological impairments of depression and anxiety. Evans relies primarily on the opinions of Drs. Rau and Kerns to support this argument. Both of them found some moderate impairments but neither one concluded she could not work with those limitations. (AR 600-01, 604-06.) To the contrary, Dr. Kerns concluded, after reviewing the examination of Dr. Rau and Plaintiff's records from COPE, that she could perform unskilled work on a competitive basis. (AR 606, 621.) Plaintiff cites every limitation noted by Drs. Rau and Kerns but does not acknowledge Dr. Kerns's ultimate conclusion that with those limitations Evans could perform unskilled work. *See Atkinson v. Astrue*, 389 Fed. App'x 804, 808 (10th Cir. 2010) (upholding RFC based on a doctor's opinion that claimant could perform non-complex work although ALJ did not discuss each limitation found by that doctor); *see also Johansen v. Barnhart*, 314 F.3d 283, 289 (7th Cir. 2002) (finding substantial evidence to support ALJ's mental RFC when he relied upon the only medical expert that provided an opinion on that subject even if others found more significant limitations). There are no contrary medical opinions in the record. The nurse practitioner who saw Evans at COPE diagnosed her with moderate depression and concluded she did not meet the criteria for serious mental illness. (AR 671, 724.) There is substantial record evidence to support the ALJ's finding that Evans could do unskilled work.

The Court finds the ALJ did not err regarding Evans's RFC. Plaintiff does not argue that, accepting the ALJ's RFC as accurate, there was error at Step Five. Further, as cited by the ALJ, a person of Evans's age, education, RFC and with an ability to do unskilled work, is not disabled under the Medical-Vocational Guidelines. 20 C.F.R. Part 404, Subpart P, App.2, Rule 202.11 Therefore, the Court finds no error as to Claim 4.

## **CONCLUSION**

A federal court may affirm, modify, reverse, or remand a social security case. 42 U.S.C. § 405(g). To qualify for disability, a claimant's impairment must have lasted or must be expected to last for a continuous period of at least 12 months." 20 C.F.R. §§ 404.1509(a), 416.909(a). The ALJ found that Plaintiff had serious impairments, however, they did not prevent her from working for a continuous 12 month period. Plaintiff has not established that the ALJ erred in his decision and the Court finds that his opinion is supported by substantial evidence. Therefore, the Commissioner's decision is affirmed.

Accordingly,

**IT IS ORDERED** that Plaintiff's case is **DISMISSED** and the Clerk of Court shall enter judgment.

DATED this 25th day of September, 2013.

D. Thomas Ferraro
United States Magistrate Judge